```
                    UNITED STATES DISTRICT COURT                        1
                     EASTERN DISTRICT OF TEXAS
                         SHERMAN DIVISION


UNITED STATES OF AMERICA         :      DOCKET NO. 4:19CR309-3
                                 :
VS.                              :      SHERMAN, TEXAS
                                 :      JANUARY 21, 2021
MAXINE JULIETTE MITCHELL         :      11:45 A.M.


                        SENTENCING HEARING
             BEFORE THE HONORABLE AMOS L. MAZZANT, III,
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:            MR. MATTHEW JOHNSON
                               U.S. ATTORNEY'S OFFICE
                               600 E. TAYLOR, SUITE 2000
                               SHERMAN, TEXAS   75090


FOR THE DEFENDANT:             MR. MARK ARONOWITZ
                               LAW OFFICE OF A&K
                               P.O. BOX 1201
                               TEXAS CITY, TEXAS   77592


COURT REPORTER:                MS. JAN MASON
                               OFFICIAL REPORTER
                               U.S. DISTRICT COURTHOUSE
                               101 E. PECAN
                               SHERMAN, TEXAS   75090
```

PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

1          THE COURT: The next case is 4:19CR309, United States of America versus Maxine Juliette Mitchell. For the Government?

         MR. JOHNSON: Matt Johnson for the United States.

         THE COURT: And for the Defendant?

         MR. ARONOWITZ: Good morning, Mark Aronowitz, A-R-O-N-O-W-I-T-Z, on behalf of the Defendant.

         THE COURT: Thank you. Welcome to Sherman. You had a little drive today.

    And then, ma'am, you're here for your sentencing pursuant to your final Presentence Report that was filed on November 24th, 2020. Have you had a chance to review the final Presentence Report?

         MS. MAXINE MITCHELL: Yes, Your Honor.

         THE COURT: Have you had a chance to discuss it with counsel?

         MS. MAXINE MITCHELL: Yes, Your Honor.

         THE COURT: Do you understand the Presentence Report?

         MS. MAXINE MITCHELL: Yes.

         THE COURT: Do you believe the report adequately covers your background?

         MS. MAXINE MITCHELL: Yes, I believe so, Your Honor.

         THE COURT: And are you satisfied with the accuracy of the report?

         MR. ARONOWITZ: The factual accuracy.

1        THE COURT: Just the factual part.

2        MS. MAXINE MITCHELL: Yes, Your Honor.

3        THE COURT: And then let me ask defense counsel, have
4   you had a chance to review the final Presentence Report and do
5   you believe your client understands it?

6        MR. ARONOWITZ: Yes, Your Honor.

7        THE COURT: And other than the objections you filed,
8   any other comments, additions or corrections to the report?

9        MR. ARONOWITZ: No.

10       THE COURT: And on behalf of the Government, any
11  comments, additions or corrections or objections?

12       MR. JOHNSON: No, Your Honor.

13       THE COURT: And then, sir, you have several
14  objections, so I'll let you begin with objection number one.

15       MR. ARONOWITZ: Before we get to objection number
16  one, I do want to make a brief comment on the criminal history.
17  I'm not sure it makes a big difference, seeing the history is
18  one, but I do -- it is, I think, important to understand that
19  the conviction she had in California was a mutual conviction
20  where her husband and her were in a fight. They both were
21  convicted. It wasn't a situation where she attacked him
22  solely.

23       So I think the criminal history over-emphasizes her
24  role in that aspect, so I did want to bring that up. And
25  that person did later get convicted for assaulting her on

```
 1  numerous other occasions.
 2              THE COURT:  Okay.  So we'll go ahead and proceed.
 3              MR. ARONOWITZ:  But in terms of the specific
 4  objections, may I proceed?
 5              THE COURT:  Yes, go to your first objection.
 6              MR. ARONOWITZ:  Yes.  Our first objection involves
 7  the two point adjustment, upward adjustment for the firearm.
 8  In this case, a little background, Ms. Mitchell was the
 9  paramour of another co-defendant in this case and lived in the
10  home with him, and that individual was by far the large -- the
11  larger participant in the actual conspiracy.  Ms. Mitchell was
12  more closer to -- well, basically she was a homemaker with a
13  lot of drugs in the house.
14       So one of the things that was given to the co-defendant
15  as a gift was a firearm, and that firearm was kept in the
16  home.  There's no -- and the co-defendant gave a statement
17  saying it was a gift to him.  It was his personal property.
18  It was found in a closet.
19       Ms. Mitchell had, although I guess technically
20  constructive access to the weapon, it wasn't her weapon.
21  She never touched it.  There was never any indication in any
22  record that she had anything to do with using a weapon in
23  furtherance of this conspiracy or at any time in the
24  conspiracy.
25       So we believe that, although we understand the burden
```

is low, there is still some burden to show she had some personal connection to that weapon, not just the fact that she lived there. I don't believe mere presence in the -- in the residence is enough to give the two point adjustment. So that's our first objection.

THE COURT: Mr. Johnson.

MR. JOHNSON: Your Honor, I think the legal analysis contained in the Presentence Report is accurate.

She had constructive possession of the firearm, and I think that's the key issue here when you're talking about reasonable foreseeability and possession of a firearm by a co-conspirator is she does have to possess it.

But the Fifth Circuit has been clear that when it comes to possession, it can be constructive possession. And because that was her apartment, the gun was found in the apartment, then I think the two points legally would apply.

THE COURT: And the Court agrees. I mean, in this situation, constructive possession is appropriate for the enhancement to apply, and the Government's burden is relatively low to establish that first step. And, really, it would be the defense burden to show it was improbable that the weapon was connected to the offense. In this case it was in the same facility. It does not require the Defendant personally to touch the gun, but it is in proximity so it's foreseeable for the situation to occur.

1  So I'm going to overrule the objection and find by a
2  preponderance of the evidence that the two point enhancement
3  applies.
4      Your next objection.
5          MR. ARONOWITZ:  Our next objection is we did
6  request -- we objected that she did not receive a two point
7  reduction for being a minor participant in this specific
8  conspiracy alleged.
9      Her role here was basically she let her boyfriend use
10 her car and she drove him to meetings to where he sold and
11 picked up drugs.
12     She personally -- well, that's her role, so -- and they
13 used the money from those drug sales to pay for joint bills
14 in their home.  As I said, they lived in the same residence.
15 So although she did receive economic benefit from it, she
16 also had a full time real job that she was using to pay
17 bills as well.
18         THE COURT:  Response?
19         MR. JOHNSON:  Your Honor, I -- I do agree both with
20 probation, and I also understand why they've asked for anywhere
21 from two to four reduction.  I do believe that she's less
22 culpable than her co-defendant, Mr. Marzioli, who was really
23 the main methamphetamine dealer as far as at this level of the
24 conspiracy.
25     And obviously, the quantities for cocaine, which she --

we do prove that she knew about the methamphetamine, but the quantities of cocaine that she was dealing would result in a lower sentence. And so if the Court wants to give a two point reduction, we would not be -- we would not object to that.

      THE COURT: So the Government is conceding they believe she qualifies under 3B1.2(b), that she qualifies for a minor participant to receive a two point level reduction?

      MR. JOHNSON: Yes, Your Honor.

      THE COURT: Okay. So I will go ahead and sustain the objection and then adjust paragraph 26 and add in a minus two under 3B1.2.

   What's next?

      MR. ARONOWITZ: Our fourth objection, unfortunately, based on the Court's earlier ruling to our first objection kind of moots that, but just for the record, we'll go ahead and put it on the record that we do believe that if the Court had allowed her not to have the -- to not have the adjustment for the use of the weapon, that she would qualify for the Safety Valve, and that would put her below the statutory minimum.

      THE COURT: I understand. And, of course, I'll overrule the objection because she doesn't qualify because of the firearm issue.

   I will say that -- because it was in one of the other cases that didn't proceed today. Maybe it's the last case,

I don't remember. A couple of my cases went away. But I had to look up some case law on this issue on the Fifth Circuit decisions, and constructive possession is sufficient to take away the Safety Valve, because someone raised that objection, that the person didn't have actual possession of the -- the objection in the other case, in doing the research, the Fifth Circuit later -- there is a decision that said actual, but I think it was taken too literal and then a later Fifth Circuit published decision said it's -- constructive is sufficient to -- for purposes of Safety Valve.

Okay. I think that's all your objections.

MR. ARONOWITZ: Yes, Your Honor, and -- but we would just make one brief point. We certainly understand the Court's reasoning on that issue, but we would just like to point out that this is an issue not only of constructive possession, but of constructive joint possession, where another individual specifically says this is my firearm that was given to me as a present.

THE COURT: I understand. The record will note that.

Okay. So, ma'am, you pleaded guilty to count one, conspiracy to possess with the intent to manufacture and distribute 500 grams or more of methamphetamine, or 50 grams or more of methamphetamine actual, and 28 grams or more of cocaine base, or an amount of -- or in an amount of mixture

or substance containing a detectable amount of cocaine.

    To the extent I haven't fully accepted the plea agreement, I will fully accept it now.

    So the Court finds the information contained in the Presentence Report has sufficient indicia of reliability to support its probable accuracy. The Court adopts the factual findings, undisputed facts and the guideline applications as contained in the Presentence Report, except as changed based on the sustained objection that the Court has made.

    MR. JOHNSON: Your Honor, maybe this would be the time to bring this up, but prior to her arrest in November with a small amount of marijuana, for which she is not going to be charged, the Government fully intended to give her the three point reduction for acceptance of responsibility.

    Ms. Mitchell, upon her arrest, immediately cooperated. She consented to the search of her cell phone. She was there when voice calls were made to Mr. Tanner, who you just sentenced. He came over with more methamphetamine and, of course, he then turned around and cooperated, like I told you during his sentencing.

    That led to the discovery of another firearm, many ounces of cocaine, 500 grams of methamphetamine and three additional defendants.

    So I don't know if they're going to ask for the three points back, but I would be willing to give it to her if

1 they did.

2 THE COURT: You're being overly generous today, so --
3 typically the Court does not give -- when you violate pretrial,
4 which you have, I wouldn't give it back. However, the
5 Government is asking and so -- the defense hasn't asked for
6 that, but I'm glad you stopped me where you did before I made
7 all my findings. So I presume you would like that back?

8 MR. ARONOWITZ: We would make that request officially
9 now.

10 THE COURT: And since the Government is asking me to
11 give that back -- absent that, I wouldn't give it back. I'll
12 be candid, so -- so that would be an additional three points
13 off. And for purposes of the record, that would be paragraph
14 30 will be adding that.

15 Okay. Let me go ahead and continue. Again, let me
16 indicate the Court adopts the factual findings, undisputed
17 facts and the guideline applications except as to the
18 objections the Court sustained and the request of the
19 Government to add back the acceptance points.

20 Based upon a preponderance of the evidence presented
21 and the facts in the report, while viewing the Sentencing
22 Guidelines as advisory, the Court concludes as follows: The
23 total offense level now is a 29. The criminal history
24 category is still I and that provides for a guideline range
25 of 87 to 108 months of imprisonment.

1     Let me ask, have I done that calculation correctly,
2  since we've had a couple changes?
3            MR. JOHNSON:  I believe so, Your Honor.
4            MR. ARONOWITZ:  That's our understanding, Your Honor.
5  Thank you.
6            THE COURT:  Very good.  So let me first call upon
7  defense counsel if you would like to comment on what you
8  believe the appropriate sentence should be in this case.
9            MR. ARONOWITZ:  We do believe the Court should assess
10 punishment within the guidelines, which would be, of course,
11 under the statutory minimum.  We've kind of made our argument
12 earlier regarding why we believe in this unique case the
13 statutory minimum is --
14           THE COURT:  Well, I guess I read that incorrectly.
15 Because Safety Valve doesn't apply, the sentence is 120 months,
16 even though the guideline range is 87 to 108.  Without Safety
17 Valve, the sentence is 120 months, so I didn't state that
18 correctly, so I want to correct that.
19           MR. ARONOWITZ:  Right.  And so to be clear, we are
20 asking that the Court sentence her under the guidelines at 87
21 months.
22           THE COURT:  But you understand, I can't do that?
23           MR. ARONOWITZ:  Understanding the Court's rulings, we
24 understand, yes.
25           THE COURT:  Right.

1         MR. ARONOWITZ: But I thought you were just asking what we wanted, so I'm just saying our position is, if we had gotten what we wanted, that's our request.

        THE COURT: I understand. But you understand that, based on the Court's rulings, that's not -- it would be an illegal sentence.

        MR. ARONOWITZ: Yes, Your Honor.

        THE COURT: I don't have discretion without Safety Valve to do that.

        MR. ARONOWITZ: Yes, Your Honor. Without Safety Valve, we're requesting the minimum of 120 months.

        THE COURT: And I assume that's what the Government is asking me to impose.

        MR. JOHNSON: Yes, Your Honor.

        THE COURT: Okay. So, Ms. Mitchell, you have the right to address the Court. Now would be the time if you would like to say something.

        MS. MAXINE MITCHELL: I just -- things just haven't really panned out the way I expected today and I really don't know what to say. I --

        THE COURT: How so?

        MS. MAXINE MITCHELL: I mean, I was hoping for Safety Valve. And I didn't even know that he had that firearm. So I take responsibility for my reckless lifestyle, and I feel very, very ashamed of my actions and everything that led to this

```
 1  moment, but I just -- I didn't know about that firearm.
 2          THE COURT:  And I understand that's your position,
 3  ma'am, but I also -- you know, I didn't say you had actual
 4  knowledge of it.  It's more constructive possession of it.  And
 5  the reality is that, you know, guns are tools of the trade and
 6  it's clearly foreseeable that you would have knowledge of that.
 7  So I understand you didn't, but I -- I guess what I'm telling
 8  you is I'm being consistent with the way I've applied this in
 9  all other cases, you know, so --
10       I'm sorry.  Go ahead.  Anything else?
11          MS. MAXINE MITCHELL:  I'm from El Salvador.  We don't
12  have firearms over there.  I've never even touched a firearm
13  before.  I've never ever, ever shot a gun in my life, so it's a
14  very, very big difference.  It's -- it's a major impact in my
15  case.
16          THE COURT:  I understand.  Anything else you want to
17  say, ma'am?
18          MS. MAXINE MITCHELL:  No.  I'm just ashamed of all
19  the actions that brought me here.
20          THE COURT:  And I understand, ma'am, and I hope you
21  understand.  I mean, based on everything in this case, I wish I
22  could go down to the 87 months.  It's just, I have to follow
23  the law and the enhancement applied under the law and the facts
24  of the case, and so I can't carve out an exception just because
25  I would like to give you a lesser sentence, if I could, so --
```

1   so it's not -- so I hope you understand, I have to follow the
2   law and make those decisions, irrespective of the impact on
3   your case.
4       Again, I don't like the result, but it is -- I hope you
5   understand from my point of view.  So I'm sorry, ma'am.
6       Any reason why the Court should not pronounce sentence
7   at this time?
8               MR. JOHNSON:  No, Your Honor.
9               THE COURT:  Any reason why I shouldn't?
10              MR. ARONOWITZ:  Oh, none from the defense, Your
11  Honor.
12              THE COURT:  Pursuant to the Sentencing Reform Act of
13  1984, having considered the factors noted in 18 USC Section
14  3553(a) and having consulted the advisory Sentencing
15  Guidelines, it's the judgment of the Court the Defendant is
16  hereby committed to the custody of the Bureau of Prisons to be
17  imprisoned for 120 months on count one of the indictment, which
18  is the statutory minimum in this case.
19      This sentence will run concurrently with any sentence
20  imposed in the 205th District Court of Cooke County in
21  Gainesville, Texas, Docket No. CR19-00851.
22      The Court recommends you receive appropriate mental
23  health treatment while imprisoned and also recommends
24  appropriate drug treatment while imprisoned.
25      The Court finds you don't have the ability to pay a

1  fine and I'll waive the fine in this case.
2         It is ordered you pay the United States a special
3  assessment of $100, which is due and payable immediately.
4         You are ineligible for all federal benefits listed in
5  21 USC Section 862(d) for a period of one year from the date
6  of this order.
7         Upon release from imprisonment, you shall be placed on
8  supervised release for a term of five years.  Within 72
9  hours of release from the custody of the Bureau of Prisons,
10 you must report in person to the probation office in the
11 district to which you're released.
12        You must not commit another federal, state or local
13 crime, and you must comply with the standard conditions that
14 have been adopted by the Court.
15        In addition, you must comply with the mandatory and
16 special conditions and instructions that have been set forth
17 in your Presentence Report.
18        Let me ask counsel, do you have someplace you would
19 like me to include geographically for purposes of placement
20 as a recommendation to the Bureau of Prisons?
21            MR. ARONOWITZ:  Yes, Your Honor, we're requesting
22 northern California.  I'm -- I think Lompoc, but I'm not sure
23 if that's -- exactly where that is in California.
24            THE COURT:  Okay.  You want northern California, but
25 what's the facility you're asking for?

1                MR. ARONOWITZ:  Lompoc.

2                THE COURT:  Okay.  So we'll look that up and see if
3    that's a facility that --

4                MR. ARONOWITZ:  She has a very ill sister in Fresno.

5                THE COURT:  Okay.

6                MR. ARONOWITZ:  So I think that's -- anyway --

7                THE COURT:  My staff will look and see, but you want
8    to be around Fresno, correct?

9                MR. ARONOWITZ:  Yes, but I don't think there's a
10   facility in Fresno.

11               THE COURT:  I understand, but we'll see what we can
12   find out in terms of which one is closest to that.

13         Now, ma'am, you have the right to appeal your
14   conviction if you believe your guilty plea was somehow
15   unlawful or involuntary, or if there's some other
16   fundamental defect in the proceedings that were not waived
17   by your guilty plea.

18         Do you need a minute, ma'am?  Are you okay?

19               MS. MAXINE MITCHELL:  I'm sorry.  What?

20               THE COURT:  Are you okay proceeding?

21               MS. MAXINE MITCHELL:  (Nods in affirmative response.)

22               THE COURT:  Okay.  You have a statutory right to
23   appeal your sentence under certain circumstances, particularly
24   if you believe your sentence is contrary to law.

25         However, you can waive some of those rights as part of

1  your plea agreement, and you have entered into a plea
2  agreement which waives certain rights to appeal your
3  conviction and your sentence.
4     With the exception of the grounds reserved in your plea
5  agreement, you have waived any right to appeal in this case.
6  Such waivers are generally enforceable, but if you believe
7  the waiver is not enforceable, you would need to present
8  that theory to the Appellate Court.
9     With few exceptions, any notice of appeal must be filed
10 within 14 days of the judgment being entered in this case.
11 If you're unable to pay the cost of the appeal, you can
12 apply for leave to appeal in forma pauperis, which is
13 without payment of fees. If you so request assistance, the
14 clerk of the court will prepare and file a notice of appeal
15 on your behalf.
16     Your Presentence Report is already part of the record.
17 It's under seal. It will remain under seal unless needed
18 for purposes of appeal.
19     Are there any charges to dismiss in this case?
20         MR. JOHNSON: No, Your Honor.
21         THE COURT: Okay. And so anything further from the
22 Government?
23         MR. JOHNSON: No, Your Honor.
24         THE COURT: Anything further from defense?
25         MR. ARONOWITZ: Just one brief point. We -- this

1 Defendant does have a detention hearing set in -- before the
2 Magistrate in Plano for next week.  We would believe that that
3 might be moot at this point, so we would just request that we
4 be -- that whatever docket entry needs to be made.
5          THE COURT:  Sure.  I will go ahead and I do have that
6 in front of me.  I'm glad you brought that up because I omitted
7 that.
8     So the petition was filed I think on November 9th.
9 We'll go ahead and rule that detention issue moot since she
10 has now been sentenced, and we'll notify the Magistrate
11 Judge about that as well so it comes off the docket.
12      Okay.  So, ma'am, you'll go back into the custody of
13 the marshals pending placement.  Thank you.

21 I certify that the foregoing is a correct transcript from
22 the record of proceedings in the above-entitled matter.
23
24 _____    _____
Jan Mason                               Date
25